**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

HEALTH AND HAPPINESS (H&H) US
LLC, and HEALTH AND HAPPINESS
(H&H) US INTERNATIONAL
INCORPORATED,

        Plaintiffs,

v.

NUTRAMAX LABORATORIES, INC.,
and NUTRAMAX LABORATORIES
VETERINARY SCIENCES, INC.,

        Defendants.

Case No. 6:24-cv-01788-CEM-LHP

## JOINT PRE-TRIAL STATEMENT

Pursuant to Local Rule 3.06(b) and this Court's Case Management and Scheduling Order (Dkt. 46), Plaintiffs Health and Happiness (H&H) US LLC and Health and Happiness (H&H) US International Incorporated (collectively, "Plaintiffs" or "Zesty Paws") and Defendants Nutramax Laboratories, Inc., and Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Defendants" or "Nutramax"), (collectively with "Plaintiffs" or "Zesty Paws," the "Parties") respectfully submit this Joint Pre-Trial Statement.

The content of this proposed Joint Pre-Trial Statement may be significantly impacted by the Court's determination of multiple motions that are currently pending. First, Zesty Paws' Motion for Summary Judgment (Dkt. 60) and Nutramax's Motion

1

for Summary Judgment (Dkt. 61) are fully briefed, ripe for determination, and are potentially case-dispositive. Second, as of this filing, the Parties are still engaged in briefing on Zesty Paws' Motion to Dismiss Nutramax's Amended Counterclaims (Dkt. 96). Third, Nutramax has requested an amended case schedule (including the assignment of a new trial term) that allows leave to conduct limited discovery regarding matters raised in its answer, affirmative defenses, and counterclaims (Dkt. 89) via a motion that Nutramax timely filed after the close of discovery, and Zesty Paws has opposed (Dkt. 93). The parties agree that summary judgment motions and motion to dismiss raise gatekeeping issues about questions to be resolved by the jury. Nutramax also believes that its motion for limited discovery on its answer, affirmative defenses and counterclaims (Dkt. 89) raises gate keeping issues that need resolving before trial. Without rulings on these matters, which will facilitate more efficient presentation of each party's case, trying this matter will be complicated by more arguments about the admissibility of evidence, the appropriate jury instructions, and potential confusion of the jury.

The Parties therefore respectfully submit this Joint Pre-Trial Statement without waiver of any of the arguments they have made in connection with the foregoing motions, and they respectfully submit that this joint pretrial statement and its attachments should be revisited once the Court has ruled on the pending motions.

1. **Basis for Federal Jurisdiction**

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as the Parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. **Concise Statement of the Nature of the Action**

This matter concerns cross breach of contract claims arising out of a June 29, 2023, Settlement Agreement executed by the Parties to resolve a prior lawsuit.[1]

A. The Parties are preparing to try the following claims asserted by Zesty Paws which are currently before the Court on cross motions for summary judgment (*see infra* Section 13):

- Count I (Breach of Contract - #1 Claims);

- Count II (Breach of Contract - Leading Brand Claims);

- Count III (Declaratory Judgment Act - #1 Claims); and

- Count IV (Declaratory Judgment Act - Leading Brand Claims).

B. The Parties are also preparing to try the following alternatively pled amended counterclaims asserted by Nutramax, on which Zesty Paws' motion to dismiss remains pending (*see infra* Section 13):

- Alternatively Pled Count I (Breach of Contract – Notice and Cure);

---

[1] *Nutramax Laboratories, Inc. et al. v. Zesty Paws LLC et al.*, Civil Action No. 6:22-cv-00626-CEM-LHP (M.D. Fla.) ("Prior Action").

3

- Alternatively Pled Count II (Breach of Contract - Forum); and

- Alternatively Pled Count III (Promissory Estoppel).

**3.    General Statement of Each Party's Case**

<u>**Zesty Paws' General Statement of the Case**</u>

Zesty Paws' breach of contract claims (Counts I and II) and declaratory relief claims (Counts III and IV) seek to hold Nutramax to the terms of the bargain it struck with Zesty Paws to resolve a prior lawsuit between the Parties in this Court.[2] In that settlement agreement (the "Settlement Agreement"), Nutramax expressly released Zesty Paws from liability for all claims that Nutramax had asserted in the prior lawsuit, or could have asserted in the prior lawsuit, including Nutramax's assertion that Zesty Paws' claim to be the "leading" (or top-selling) brand of pet supplements was false and misleading.

Weeks later, however, Nutramax sent Zesty Paws a letter threatening to sue Zesty Paws in New York for claiming that Zesty Paws is the "#1 Brand of Pet Supplements in the USA" (along with several variations of that claim (together, "the #1 Claims")). Nutramax made good on that threat and eventually filed false advertising claims in New York[3] regarding the #1 Claims, even though Nutramax expressly admitted in later correspondence with Zesty Paws in the New York Action

---

[2] *Nutramax Laboratories, Inc. et al. v. Zesty Paws LLC et al.*, Civil Action No. 6:22-cv-00626-CEM-LHP ("Prior Action").

[3] *Health and Happiness (H&H) US LLC v. Nutramax Laboratories, Inc. et al.*, No. 1:23-cv-10849-LGS (S.D.N.Y. filed Dec. 13, 2023) ("New York Action").

4

that the #1 Claims are "functionally identical" to the "leading brand" advertisements that were disputed—and released—in the Prior Action. Nutramax sought with that correspondence to prevent Zesty Paws from making "leading brand" claims—claims that are indisputably identical to those covered by the Settlement Agreement's release.

Nutramax makes various futile attempts to back off its letter that conceded the "substantially identical" nature of the "#1 Brand" and "leading brand" claims. Specifically, Nutramax suggests that its letter was limited to only one display at Petco. But the letter was in no way cabined to that single display. In its letter, Nutramax focused on the "meaning" of the claim itself—insisting that "there can be no legitimate argument that 'leading brand' means anything other than 'best-selling brand," and that "#1" and "leading" claims were "identical but differently phrased" and "functionally identical." Further, Nutramax's attempt to pinhole its letter to just the "Petco Leading Brand" claim leads to at least two nonsensical suggestions: (1) the falsity of Zesty Paws' "leading brand" claim somehow depends on where it is displayed; and (2) despite Nutramax suing Zesty Paws *twice* for making brand leadership claims, Nutramax may have been fine with Zesty Paws making the "leading brand" claims as long as it was not on this particular Petco display.

Nutramax also attempts to classify the #1 Brand claims as "Euromonitor" claims, seeking to distinguish them from the "leading brand" claims released in the prior lawsuit. That too fails. Nobody disputes that Euromonitor *validated* Zesty Paws as the #1 Brand, but that is not the basis of Nutramax's New York claims. Rather, Nutramax challenges the actual claim that Zesty Paws *is* the #1 brand of pet

5

supplements in the United States—the claim that Nutramax itself acknowledged is identical to the "leading brand" claims that were disputed and released in the prior Florida lawsuit.

Nutramax suggests that the Settlement Agreement's release was limited to #1 Claims that pre-date parties' Settlement Agreement. Under this theory, Nutramax was free to bring identical claims against Zesty Paws for continuing to maintain its #1 Claims after the Settlement Agreement. That view is incompatible with the plain text of the Agreement, which specifically provides that released claims—like the "leading brand" brand claims—may "continue to subsist" *even after* the Effective Date. It also contradicts the parties' agreement that they were aware of no unresolved claims as of the Settlement Agreement, notwithstanding that Zesty Paws had not withdrawn its existing #1 Claims.

Nutramax also brings affirmative defenses and counterclaims premised on the view that Zesty Paws waived or forfeited its rights to enforce the Settlement Agreement's release provision here because Zesty Paws sought declaratory relief in the New York action. But the plain language of Section 18 of the Settlement Agreement bars that position, stating as follows: "Failure to insist upon strict compliance with any of the terms, covenants, or conditions of this Agreement shall not be deemed a waiver of any such term, covenant, or condition, nor shall such failure at any one time or more times be deemed a waiver or relinquishment of any other time or times of any right under the terms, covenants, or conditions of this Agreement." In any event, Zesty Paws brought its claim for declaratory relief *before* Nutramax filed claims against

6

Zesty Paws that violated the Settlement Agreement.  For either independent reason, there was no waiver.

Nutramax's counterclaims are also meritless. First, Nutramax claims that Zesty Paws breached Paragraph 8 of the Settlement Agreement, which requires a party to the Settlement Agreement to provide notice and a 60-day window to cure any breach before bringing suit for that breach. But Zesty Paws fully satisfied Paragraph 8—in a letter dated July 15, 2024, Zesty Paws identified Nutramax's breach and gave Nutramax several months to cure it before filing this suit for breach of the Settlement Agreement in October 2024. Second, Nutramax asserts that Zesty Paws breached Paragraph 14 of the Settlement Agreement by filing the declaratory judgment action in New York instead of this court. But Paragraph 14 provides that only disputes ***related to the Settlement Agreement*** shall be brought in the Middle District of Florida. Zesty Paws' request for declaratory relief in New York is not related to the Settlement Agreement; it seeks only to establish whether the #1 brand claims ***are true and not misleading***.  Finally, Nutramax' "estoppel" counterclaim ignores black-letter law barring promissory estoppel claims where, as here, the parties have a written contract addressing the relevant issues. And even if the "estoppel" counterclaim wasn't barred by the Settlement Agreement itself, Nutramax cannot establish that Zesty Paws' filing a claim for declaratory relief in New York constituted any sort of promise upon which Nutramax detrimentally relied.

In sum, Nutramax's attempt to re-litigate released claims breaches the Settlement Agreement. With this action, Zesty Paws seeks to prevent Nutramax's

continued breaches of the Settlement Agreement and requests compensation for the

damages that Nutramax's breaches have caused to Zesty Paws.

### Nutramax's General Statement of the Case[4]

This case involves cross-claims for breach of a Confidential Settlement

Agreement and Mutual Release (the "Settlement Agreement") entered into on June

29, 2023 resolving litigation challenging Zesty Paws' ingredient label claims for certain

products, as well as discrete claims that: (a) "Zesty Paws is America's leading brand

of pet supplements" in a LinkedIn post; and (b) "the nation's leading functional pet

supplement brand" in a press release. As discussed below, Zesty Paws' own statements

and conduct demonstrate that Nutramax did not breach the Settlement Agreement.

Further, to the extent Zesty Paws' interpretation of the Settlement Agreement is

correct (and it is not), Zesty Paws waived Nutramax's breach and itself first breached

the Settlement Agreement through its conduct.

Zesty Paws presently contends that Nutramax's filing of its false advertising

compulsory *counterclaims* in the New York Action over three sales superiority claims

---

[4] Nutramax believes that this case is not ready to be tried and respectfully requests that the Court continue this case from the April 2026 trial term. As would be the case in any trial, a decision on the Parties' cross-motions for summary judgment would be likely to dramatically change the complexion of the proceeding. So too with Zesty Paws' Motion to Dismiss Nutramax's Amended Answer and Counterclaims (Dkt. 96), which Zesty Paws filed on February 20, and which has yet to be fully briefed as of the filing of this joint pretrial statement. Finally, the evidence to be used at trial remains in flux, as Nutramax filed a motion to amend the Court's scheduling order on January 15, 2026 (Dkt. 89) to allow Nutramax to conduct limited fact discovery on its recently-filed affirmative defenses and counterclaims, as well as on the as-yet identified affirmative defenses that Zesty Paws may submit in response thereto. Zesty Paws opposed Nutramax's motion to reopen discovery (Dkt. 93) and disagrees that pending motions have any bearing on trial readiness.

based on 2022 sales data as verified by Euromonitor (the "Euromonitor #1 Claims") breached the Settlement Agreement because these claims were not a "future dispute" as contemplated by the Settlement Agreement but instead were released by it. Specifically, the Euromonitor #1 Claims state that Zesty Paws is the (1) "#1 Brand of Pet Supplements in the USA," (2) "#1 Selling Pet Supplement Brand in the USA," and the (3) "#1 Brand of Pet Supplements in the USA." Zesty Paws' position is belied by its own course of conduct in filing and pursuing claims against Nutramax in the New York Action. Zesty Paws, not Nutramax, initiated the New York Action. Zesty Paws even cited the "future dispute" provision of the Settlement Agreement as the reason venue was proper in the Southern District of New York, acknowledging these claims were a "future dispute" and not "released" by the Settlement Agreement. Moreover, Zesty Paws tellingly did not plead "release" in its answer as an affirmative defense to Nutramax's counterclaims in the New York Action. And even the New York Action was not filed by Zesty Paws until nearly five months after receiving Nutramax's notice of dispute. During that time, Zesty Paws insisted on strict compliance with the pre-litigation future dispute resolution procedures of the Settlement Agreement, including that the Parties participate in a formal mediation. At no time did Zesty Paws ever suggest that the claims *it, not Nutramax, brought suit over* were barred by the Parties' Settlement Agreement.

Zesty Paws maintained these positions for almost a year, during which time the Court in the New York Action preliminarily enjoined Zesty Paws' Euromonitor #1 Claims. Only after being preliminarily enjoined and changing counsel did Zesty Paws

9

for the first time assert that the counterclaims in the New York Action were not a
"future dispute" but instead were barred by the limited release in the Settlement
Agreement.

The only other claim at issue is Zesty Paws' in-store statement at Petco that it
"is America's Leading Brand of Pet Supplements" (the "Petco Leading Claim"), first
identified by Nutramax in June 2024. That claim could not have existed before the
June 29, 2023, Effective Date of the Settlement Agreement because Zesty Paws did
not begin selling products in Petco stores until May 2024. The Petco Leading Claim
therefore falls outside the scope of the release. Further, Nutramax has never sued or
otherwise challenged the Petco Leading Claim in a manner to give rise to a claim for
breach of contract. Nutramax only raised the Petco Leading Claim after the entry of
the preliminary injunction—which enjoined not just the Euromonitor #1 Claims
specifically challenged by Nutramax, but also "any substantially identical claim" like
the Petco Leading Claim.

Zesty Paws' argument that these new claims were released is wrong, and at a
minimum it is waived. The Settlement Agreement (entered into to resolve litigation
Nutramax filed in 2022 challenging Zesty Paws' advertising claims regarding certain
products identified in the Third Amended Complaint, as well as discrete claims that:
(a) "Zesty Paws is America's leading brand of pet supplements" in  a LinkedIn post;
and (b) "the nation's leading functional pet supplement brand" in a press release)
provides for a "**limited release**" covering *only* (emphasis in original):

10

(1) "**the Claims against Zesty Paws**"—i.e., the specific causes of action—"**that were actually asserted**" in *Zesty Paws I*; and

(2) causes of action "known or unknown that could have been brought in connection with any of the products identified in [Nutramax's] Third Amended Complaint" in *Zesty Paws I*;

Of these two limited categories, only causes of action that "existed as of the Effective Date are subject to this release – claims that did not exist as of the Effective Date [were] not."[5]

Neither the Petco Leading Claim, nor the Euromonitor #1 Claims (the latter being the only claims at issue in the New York Action), existed as of the Effective Date of the Settlement Agreement, and therefore none of those claims could have been released. What is more, these claims are based on a certification from Euromonitor International, Ltd. ("Euromonitor") that did not exist until after the Effective Date of the Settlement Agreement, and Zesty Paws admitted that it could not make the Euromonitor #1 Claims until after it received that certification.

---

[5] The Settlement Agreement also includes a Future Dispute Resolution provision requiring the Parties to follow specific procedures for the escalation, resolution, and litigation of "future disputes"—as opposed to disputes "relating" to the Settlement Agreement.

**4.      Exhibit List / Jury Instructions / Verdict Form**

The Parties' joint exhibit list is attached hereto as **<u>Attachment 1</u>**, the Parties' joint jury instructions are included as **<u>Attachment 2</u>**, and the Parties' competing verdict forms are included as **<u>Attachments 3(a) and 3(b)</u>**[6].

**5.      Witness List**

A joint witness list is attached hereto as **<u>Attachment 4</u>**.

**6.      Expert Witnesses**

The Parties will not call expert witnesses to testify at trial.

**7.      Monetary Damages and Other Relief Sought**

**A.      Monetary Damages** – Each party's claim of damages arises from legal fees and expenses that the Parties have incurred in response to the other party's allegedly breaching conduct. On February 24, 2026, the Parties filed a joint motion to bifurcate trial into separate phases on liability and damages (Dkt. 97).[7] Should the Court deny that motion, any party/Parties entitled to damages will seek to present evidence of legal fees and expenses that they alleged were incurred as a result of the other party's breach(es).

**B.      Injunctive / Declaratory Relief** – Zesty Paws seeks permanent injunctive relief that would enjoin Nutramax's allegedly breaching conduct resulting

---

[6] The parties will continue to work towards an agreement on the verdict form.

[7] "Dkt." references herein refer to the docket in the instant action, whereas "D.E." references refer to the docket of the action indicated in the particular citation.

12

in the dismissal of Nutramax's claims in the New York Action and a declaration that the Settlement Agreement bars Nutramax's challenges of Zesty Paws' Euromonitor Certified #1 Claims and Petco Leading Claim.

**8.    Depositions**

The deposition testimony that the Parties may offer at trial, as well as objections, counter-designations, objections to counter-designations, and rebuttal designations, is designated in **Attachment 5**.

**9.    Voir Dire Questions**

A jointly proposed set of voir dire questions is attached hereto as **Attachment 6**.

**10.    Concise Statement of Each Admitted / Stipulated Fact**

**A.**    On June 20, 2023, Nutramax and Zesty Paws jointly filed a Notice of Settlement informing this Court that they had reached an agreement in principle to settle a litigation that Nutramax had filed against Zesty Paws on March 29, 2022 (called the "Earlier Litigation"). *Nutramax Laboratories, Inc. et al. v. Zesty Paws LLC et al.*, Civil Action No. 6:22-cv-00626-CEM-LHP, D.E. 99.

**B.**    On June 29, 2023, the Parties signed the Settlement Agreement, which resolved the Earlier Litigation. The Effective Date of the Settlement Agreement is June 29, 2023. The Settlement Agreement is Exhibit 1.

**C.**    On July 17, 2023, Nutramax sent Zesty Paws a "Notice of Dispute" regarding Zesty Paws' use of the following statements in its advertising: "#1

13

Brand of Pet Supplements in the USA," "USA's #1 Brand of Pet Supplements, "#1
selling Pet Supplement Brand in the USA." These claims will be referred to as the "#1
Claims" in the remainder of the stipulated facts.

      **D.**     On August 1, 2023, Zesty Paws responded to Nutramax's Notice
of Dispute about the #1 Claims.

      **E.**     On October 16, 2023, Nutramax sent Zesty Paws another letter
about the #1 Claims.

      **F.**     On October 19, 2023, Zesty Paws responded to Nutramax's
October 16, 2023 letter.

      **G.**     The Parties conducted a mediation concerning the #1 Claims on
December 7, 2023. The Parties failed to resolve their dispute through such mediation.

      **H.**     On December 13, 2023, Zesty Paws filed a declaratory judgment
action in the Southern District of New York, asking the New York court to declare
that the #1 Claims were not false or misleading. This litigation is referred to as the
"New York Action" in the remainder of these stipulations.

      **I.**     On December 22, 2023, Nutramax filed an answer, counterclaims
and a third-party Complaint in the New York Action, with counterclaims asserting
that the #1 Claims were false and misleading.

      **J.**     On January 12, 2024, Zesty Paws filed an answer to Nutramax's
counterclaims and asserted affirmative defenses.

14

**K.**    On June 28, 2024, Nutramax sent Zesty Paws a letter regarding a Zesty Paws display at a Petco that used the claim "America's Leading Brand of Pet Supplements."

**L.**    On July 15, 2025, Zesty Paws sent Nutramax a Notice of Dispute, stating that the counterclaims Nutramax brought in the New York Action about the #1 Claims were released by the Parties' June 2023 Settlement Agreement.

**M.**    Nutramax sent a response to Zesty Paws' July 15, 2024 letter on July 25, 2024.

**N.**    Zesty Paws filed its claims in this litigation on October 3, 2024.

**11.    Concise Statement of Each Agreed Principle of Law**

The Parties provide the following as representative of the applicable principles of law that may apply at trial, subject to the Court's rulings on the Parties' pending motions. The Parties believe that many of the principles may be impacted by rulings on such motions. The Parties respectfully submit therefore that this section should be revisited once the Court has ruled on the pending motions.

**A.    Applicable Law** – The Parties agree that Florida law applies to all asserted claims and counterclaims.

**B.    Burden of Proof** – The Parties agree that Zesty Paws bears the burden of proving its causes of action and its affirmative defenses by a preponderance of the evidence. The Parties also agree that Nutramax bears the burden of proving (i) its breach of contract counterclaims and (save for its equitable estoppel defense) its

15

affirmative defenses by a preponderance of the evidence and (ii) its equitable estoppel affirmative defense and estoppel counterclaim by clear and convincing evidence.[8]

    **C.    Breach of Contract** – The Parties agree that in order for either party to prevail on its breach of contract claims or counterclaims, the asserting party must establish by a preponderance of the evidence: (1) the Parties entered into a contract; (2) the asserting party did all, or substantially all, of the essential things which the contract required it to do; (3) the opposite party did something which the contract prohibited it from doing and that prohibition was essential to the contract; and (4) the asserting party was damaged by the breach.[9]

    **D.    Estoppel** – The Parties agree that the elements for promissory estoppel[10] are: (1) a representation as to a material fact that is contrary to a later asserted position; (2) a reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance there on.[11]

    **E.    Permanent Injunctive Relief** – The Parties agree that the permanent injunctive relief sought by Zesty Paws requires a showing of the following:

---

[8] Eleventh Circuit Pattern Jury Instruction, Nos. 1.1 & 3.7.2 (2025); *Healthcare Ally Mgmt. of California, LLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. 0:23-CV-61285-WPD, 2024 WL 6968825, at *16 (S.D. Fla. Aug. 28, 2024).

[9] Florida Standard Jury Instruction 416.4.

[10] Nutramax's pleadings refer to this claim as "estoppel."

[11] *Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*, 658 F. Supp. 3d 1250, 1262 (S.D. Fla. 2023).

16

> **Commented [A1]:** Because our position is that Nutramax did not plead "promissory estoppel," we'd put this in the disputed section.
>
> **Commented [A&B2R1]:** Nutramax did plead "estoppel" and the elements identified here. We have revised to just say Estoppel, which accurately reflects the pleadings.

(1) actual success on the merits; (2) irreparable harm will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs the damage the proposed injunction may cause the opponent; and (4) the injunction would not be adverse to public interest.[12]

      **F.    Declaratory Relief** – The Parties agree that Zesty Paws' declaratory relief claims (Counts III and IV) require (1) an actual controversy within this Court's jurisdiction; and (2) a determination by the Court whether Zesty Paws is legally entitled to a declaration that Nutramax is legally barred under the Settlement Agreement from the conduct complained of.

      **G.    Damages** – The Parties agree that damages recoverable by a party injured by a breach of contract are those which would naturally result from the breach and can reasonably be said to have been contemplated by the Parties at the time the contract was made.[13] The Parties also agree that a party that asserts and proves a promissory estoppel claim may recover reliance damages.[14]

      **H.    Contract Law** – The Parties agree that Florida principles governing general contract law apply to interpret the Settlement Agreement, including the rules of construction under Florida law.[15]

---

[12] *KH Outdoor, LLC v. Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006).

[13] *Sharick v. Se. University of the Health Sciences, Inc.*, 780 So.2d 136, 139 (Fla. 3d DCA 2000).

[14] *Young v. Johnston*, 475 So. 2d 1309, 1314-15 (Fla. Dist. Ct. App. 1985).

[15] *Chira v. Saal (In re Chira)*, 567 F.3d 1307, 1311 (11th Cir. 2009); *Briscoe v. Transamerica Premier Life Ins. Co.*, No. 23-cv-81577, 2024 U.S. Dist. LEXIS 215166, at *15–16 (S.D. Fla. Nov. 25, 2024).

I.     **Contract Interpretation**– The Parties agree that a contract or provision is ambiguous if it is subject to two or more reasonable interpretations after the Court applies the Florida rules of construction,[16] which is a question of law to be determined by the trial court.[17]

J.     **Admissible Evidence to Resolve Contractual Ambiguity**[18] – The Parties agree that, if the Settlement Agreement is found to be ambiguous, then certain extrinsic evidence may be permissible to aid in interpretation of the contract.

12.    **Concise Statement of Each Issue of Fact**[19]

The Parties provide the following as representative of the disputed issues of fact that will likely arise at trial, subject to the Court's rulings on the Parties' pending motions. The Parties believe that many of the following disputed issues of fact will be impacted by rulings on such motions. The Parties therefore respectfully submit that this section should be revisited once the Court has ruled on the pending motions.

Subject to the foregoing, if the Court determines that there is a genuine issue of material fact concerning either the interpretation of the Settlement Agreement or how

---

[16] *Briscoe v. Transamerica Premier Life Ins. Co.*, No. 23-cv-81577, 2024 U.S. Dist. LEXIS 215166, at *15–16 (S.D. Fla. Nov. 25, 2024).

[17] *Specialty Rests. Corp. v. Miami*, 501 So. 2d 101, 103 (Fla. Dist. Ct. App. 1987).

[18] Both Parties, as set forth in their respective motions for summary judgment believe that the Settlement Agreement is unambiguous.  However, to the extent that the Court determines that the Settlement Agreement is ambiguous, the Parties agree that this paragraph correctly reflects the law of contract interpretation in the presence of an ambiguity.

[19] Zesty Paws disputes that the following statements from this section are issues of fact: Statements A-B, H-K, and S-T.   Zesty Paws proposed a hybrid section to address statements on which the parties could not agree as to their legal or factual nature, but Nutramax refused.  Zesty Paws thus notes its position here.

the evidence applies thereto, then the factual issues may include the following with the understanding that there may be underlying issues of law that are included within or may impact these factual issues:

      **A.**    Whether Nutramax breached the Settlement Agreement's release provision when it filed its counterclaims in the New York Action challenging Zesty Paws' #1 Claims (Zesty Paws' Count I).

      **B.**    Whether the #1 Claims were released by the Settlement Agreement.

      **C.**    Whether the #1 Claims were claims that were brought or could have been brought in the Earlier Litigation.

      **D.**    Whether the #1 Claims were first made after the Effective Date of the Settlement Agreement.

      **E.**    The claims challenged in Nutramax's June 28, 2024 letter.

      **F.**    Whether Nutramax's June 28, 2024 letter challenged a claim that was brought or could have been brought in the Earlier Litigation.

      **G.**    Whether Nutramax's June 28, 2024 letter challenged a claim that was first made after the Effective Date of the Settlement Agreement.

      **H.**    Whether Zesty Paws' course of conduct waived its claim that Nutramax breached the Settlement Agreement when it filed its counterclaims against Zesty Paws in the New York Action;

19

**I.**     Whether Zesty Paws' course of conduct constitutes consent or ratification by Zesty Paws' of the counterclaims Nutramax filed against Zesty Paws in the New York Action;

**J.**     Whether Zesty Paws' course of conduct waived its claim that Nutramax breached the Settlement Agreement by sending its June 28, 2024 letter challenging a claim that Zesty Paws made at Petco.

**K.**     Whether Zesty Paws' course of conduct constitutes consent or ratification by Zesty Paws' to the complaint that Nutramax raised in its June 28, 2024 letter related to leading brand claims at Petco.

**L.**     Whether Zesty Paws was damaged as a result of the counterclaims Nutramax filed in the New York Action against Zesty Paws related to the #1 Claims, and the extent of those damages.

**M.**     Whether Zesty Paws was damaged as a result of Nutramax sending its June 28, 2024 letter challenging a claim that Zesty Paws made at a Petco.

**N.**     Whether any of Zesty Paws' damages as a result of the counterclaims Nutramax filed in the New York Action against Zesty Paws related to the #1 Claims are limited by Nutramax's factual affirmative defense of failure to mitigate damages.

**O.**     Whether any of Zesty Paws' damages as a result of sending its June 28, 2024 letter challenging a claim that Zesty Paws made at Petco are limited by Nutramax's factual affirmative defense of failure to mitigate damages.

**P.** Whether any of Zesty Paws' damages as a result of the counterclaims Nutramax filed in the New York Action against Zesty Paws related to the #1 Claims are limited by Nutramax's factual affirmative defense of offset.

**Q.** Whether any of Zesty Paws' damages as a result of sending its June 28, 2024 letter challenging a claim that Zesty Paws made at a Petco are limited by Nutramax's factual affirmative defense of offset.

**R.** Whether any of Zesty Paws' damages are limited as uncertain.

**S.** Whether Zesty Paws filing the New York Action constituted a breach of the Settlement Agreement's Notice and Cure provision.

**T.** Whether Zesty Paws filing a Declaratory Judgment Complaint in the New York Action constituted a breach of the Settlement Agreement's Choice of Law & Forum.

**U.** Whether Nutramax was damaged as a result of Zesty Paws' alleged breaches and the extent of those damages.

**V.** Whether any of Nutramax's damages are limited by Zesty Paws' factual affirmative defense of failure to mitigate damages.

**W.** Whether any of Nutramax's damages are limited by Zesty Paws' factual affirmative defense of offset.

In addition to the foregoing, there may be additional disputed issues of fact that the Parties identify in light of the Court's ruling on the pending motions.

13.     **Concise Statement of Each Issue of Law**

The Parties provide the following as representative of the disputed issues of law that will likely arise at trial, pending the Court's determination of the Parties' pending motions practice. The Parties believe that many of the following disputed issues of law will be impacted by rulings on such motions, which as of the date of this filing have yet to be fully briefed. The Parties therefore respectfully submit that this section should be revisited once the Court has ruled on the pending motions.

Subject to the foregoing, upon the Court's determination of the pending motions, the disputed issues of law may include the following:

**A.**     Whether Zesty Paws is entitled to summary judgment.

**B.**     Whether Nutramax is entitled to summary judgment.

**C.**     Whether there is a genuine issue of material fact about whether Nutramax released its challenge to the #1 Claims under the Settlement Agreement.

**D.**     Whether there is a genuine issue of material fact about whether Nutramax released its challenge to the "leading brand" claim identified in Nutramax's June 28, 2024 letter under the Settlement Agreement.

**E.**     Whether the Settlement Agreement is ambiguous.

**F.**     Whether the #1 Claims were released by the Settlement Agreement.

**G.**     Whether the "leading brand" claim identified in Nutramax's June 28, 2024 letter was released by the Settlement Agreement.

22

**H.**    Whether Zesty Paws is entitled to permanent injunctive relief and/or declaratory relief as a result of Nutramax's counterclaims challenging the #1 Claims.

**I.**    Whether Zesty Paws is entitled to permanent injunctive relief and/or declaratory relief as a result of Nutramax sending the June 28, 2024 letter concerning the "leading brand" claim.

**J.**    Whether any or all of Zesty Paws' claims are barred or limited by Nutramax's affirmative defense for failure of claim.

**K.**    Whether any or all of Zesty Paws' claims are barred or limited by Nutramax's affirmative defense of ratification and/or consent.

**L.**    Whether any or all of Zesty Paws' claims are barred or limited by Nutramax's affirmative defense of acquiescence.

**M.**    Whether any or all of Zesty Paws' claims are barred or limited by Nutramax's affirmative defense of waiver.

**N.**    Whether any or all of Zesty Paws' claims are barred or limited by Nutramax's affirmative defense of unclean hands.

**O.**    Whether any or all of Zesty Paws' claims are barred or limited by Nutramax's affirmative defense of estoppel.

**P.**    Whether any or all of Zesty Paws' claims are barred or limited by Nutramax's affirmative defense of lack of causation.

**Q.**    Whether any or all of Zesty Paws' claims are barred or limited by Nutramax's affirmative defense of failure to mitigate damages.

**R.**    Whether any or all of Zesty Paws' claims are barred or limited by Nutramax's affirmative defense of offset.

**S.**    Whether any or all of Zesty Paws' claims are barred or limited by Nutramax's affirmative defense of certain damages.

**T.**    Whether any or all of Zesty Paws' claims are barred or limited by the Settlement Agreement.

**U.**    Whether Zesty Paws' claims for attorneys' fees are barred.

**V.**    Whether Nutramax's claims for attorneys' fees are barred.

**W.**    Whether Zesty Paws breached the Settlement Agreement's Notice and Cure provision when it initiated the New York Action (Nutramax's Alternatively Pled Count I).

**X.**    Whether Zesty Paws breached the Settlement Agreement's Choice of Law & Forum provision by filing a Declaratory Judgment Complaint in the New York Action (Nutramax's Alternatively Pled Count II).

**Y.**    Whether Zesty Paws' claims for breach of contract are barred by the doctrine of promissory estoppel.

**Z.**    Whether any or all of Nutramax's counterclaims are barred or limited by Zesty Paws' affirmative defenses of failure to mitigate damages and offset.

24

**AA.**   Whether the Settlement Agreement's "no waiver" provision bars Nutramax's counterclaims and affirmative defenses as a matter of law.

In addition to the foregoing, there may be additional disputed issues of law that the Parties identify in light of the Court's ruling on the pending motions.

**14.   List of Each Pending Motion or other Unresolved Issue**

**A.**   <u>Zesty Paws' Pending Motions (all of which Nutramax has opposed or will oppose)</u>

      i.   Zesty Paws' Motion for Summary Judgment (Dkts. 60, 71, 82);

      ii.   Zesty Paws' Motion to Dismiss Defendants'/Counter-Plaintiffs' Counterclaims (Dkt. 96); and

      iii.   Zesty Paws' Omnibus Motion *in Limine* to be filed concurrent with this statement.

**B.**   <u>Nutramax's Pending Motions (all of which Zesty Paws has opposed or will oppose)</u>

      i.   Nutramax's Motion for Summary Judgment (Dkts. 61, 72, 91);

      ii.   Nutramax's Motion to Amend the Case Schedule in Light of Timely Filed Affirmative Defenses and Counterclaims (Dkts. 89, 93); and

      iii.   Nutramax's Omnibus Motion *in Limine* to be filed concurrent with this statement.

Finally, the Parties filed a joint motion on February 24, 2026 to bifurcate trial into separate phases on liability and damages. (Dkt. 97).

**15.    Statement of the Usefulness of Further Settlement Discussions**

The Parties attended an unsuccessful mediation in December 2025 and have not had any settlement discussions since. The Parties do not believe any further settlement discussions would be useful at this time.

**16.    Additional Agreements / Items**

**A.    Bifurcation of Trial**: The Parties have submitted a joint request to the Court to bifurcate the trial into two phases: a) liability; and b) damages. (Dkt. 97).

**B.    Notice of Conflict for Lead Trial Counsel for Nutramax**: As Nutramax indicated in its February 10 *Notice of Lead Trial Counsel's Potential Trial Conflict* (Dkt. 95), on February 3, 2026 lead trial counsel for Nutramax, John E. Stephenson, was alerted that he has a specially set trial in the United States District Court for the Western District of Washington that is expected to last from Monday April 6 through Friday, April 10, 2026. Further, counsel for Nutramax, Natalie C. Clayton, has a trial set *In the Matter of Certain Active Electrical Cables and Components Thereof*, Inv. No. 337-TA-1446 in front of the International Trade Commission that begins on March 30, 2026 and runs through April 3, 2026.

**C.    <u>Demonstrative Exhibit Exchanges</u>**: The Parties intend to use demonstrative exhibits at trial, including during the Parties' opening and closing statements. While the Parties recognize that the Court's Case Management and

26

Scheduling Order (Dkt. 46) requires such demonstratives to be presented to opposing counsel at least seven days prior to trial, the Parties respectfully request permission to come to agreement to deviate from that disclosure deadline. The Parties would propose that they will meet and confer to come up with a procedure for exchanges during trial and submit that request by stipulation for the Court's review.

        **D.**    **Opening and Closing Arguments**: The Parties agree and respectfully request leave of Court to make opening statements not to exceed 30 minutes per side and closing statements not to exceed 30 minutes per side (inclusive of Zesty Paws' closing rebuttal).

        **E.**    **Zesty Paws' Parent Company**: The Parties agree that Zesty Paws' corporate and ownership structure (and the headquarters of Health and Happiness (H&H US International Incorporated)) is irrelevant to this dispute and will not seek to introduce any evidence, argument, or questions regarding the facts that (1) Health and Happiness (H&H) US LLC is owned by Health and Happiness (H&H US International Incorporated, or (2) that the latter is based outside of the United States. Notwithstanding the foregoing, this agreement does not bar the admission of documents into evidence that reference or show Zesty Paws' corporate and ownership structure (and the headquarters of Health and Happiness (H&H US International Incorporated)), the fact that Health and Happiness (H&H) US LLC is owned by Health and Happiness (H&H US International Incorporated, or that the latter is based outside of the United States.

27

**17.    Signatures of Counsel for All Parties and Certificate**

In preparing this final pretrial statement, we have aimed for the just, speedy,
and inexpensive resolution of this action.

28

Respectfully jointly submitted,

/s/ *Ashley Englund Stuart*
Steven N. Feldman (*Pro Hac Vice*)
steve.feldman@lw.com
Kevin M. Jakopchek (*Pro Hac Vice*)
kevin.jakopchek@lw.com
Matthew W. Walch (*Pro Hac Vice*)
matthew.walch@lw.com
Michael Evan Bern (*Pro Hac Vice*)
michael.bern@lw.com

LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Nicole K. Atkinson
Florida Bar No.: 167150
natkinson@gunster.com
mmargolese@gunster.com
eservice@gunster.com
Ashley Englund Stuart
Florida Bar No. 1025829
astuart@gunster.com
GUNSTER, YOAKLEY & STEWART,
P.A.
777 South Flagler Drive, Suite 500E
West Palm Beach, Florida 33401
Telephone: (561) 650-0595
Facsimile: (561) 655-5677

*Counsel for Plaintiffs*

/s/ *Jason D. Rosenberg*
Jason D. Rosenberg (*Pro Hac Vice*)
Jason.rosenberg@alston.com
Alan Pryor (*Pro Hac Vice*)
Alan.pryor@alston.com
John E. Stephenson, Jr. (*Pro Hac Vice*)
John.stephenson@alston.com
Mary Grace Gallagher (*Pro Hac Vice*)
Marygrace.gallagher@alston.com
Uly Samuel Gunn (*Pro Hac Vice*)
Sam.gunn@alston.com

ALSTON & BIRD, LLP
One Atlantic Center Ste. 4900
1201 W. Peachtree St.
Atlanta, GA 30309-3424
Telephone: 404-881-7000

Natalie C. Clayton (*Pro Hac Vice*)
Natalie.clayton@alston.com
ALSTON & BIRD, LLP
90 Park Avenue
New York, NY 10016
Telephone: 212-210-9400

John D. Goldsmith
JGoldsmith@trenam.com
Florida Bar No. 0444278
TRENAM, KEMKER, SCHARF,
BARKIN, FRYE, O'NEILL &
MULLIS, P.A.
101 E. Kennedy Boulevard
Suite 2700
Tampa, FL 33602
Telephone: 813-223-7474

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 9, 2026, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all parties and counsel in this case.

_s/ Ashley Englund Stuart_