# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ZESTY PAWS LLC, HEALTH AND
HAPPINESS (H&H) US
INTERNATIONAL
INCORPORATED,

      Plaintiffs,

v.                                                           Case No.:  6:24-cv-01788-CEM-LHP

NUTRAMAX LABORATORIES,
INC., NUTRAMAX
LABORATORIES VETERINARY
SCIENCES, INC.,

      Defendants.

---

## ORDER

Before the Court is Defendants Nutramax Laboratories, Inc. and Nutramax

Laboratories Veterinary Sciences, Inc.'s Motion to Compel.  Doc. No. 110.  Plaintiffs

Zesty Paws LLC and Health and Happiness (H&H) US International Incorporated

oppose.  Doc. No. 111.  The parties also filed authorized supplemental briefing.

Doc. Nos. 113-114.  The matter is therefore ripe for consideration.

## I.      BACKGROUND.

Plaintiffs and Defendants are competitors in the pet dietary and nutritional

supplement industry.  The parties previously engaged in litigation regarding their

respective advertising practices, with such litigation resolving by way of a

-1-

settlement agreement and the dismissal of that case. *See generally Nutramax Labs., Inc. v. Zesty Paws LLC*, No. 6:22-cv-00626-CEM-LHP. Unfortunately, it appears that settlement was short-lived, as the present action asserts claims and counterclaims for breach of contract related to various terms of the settlement agreement. Doc. Nos. 38, 94. Discovery closed on October 3, 2025 (Doc. No. 46), and dispositive motions have been filed (Doc. Nos. 60-61, 78, 90, 96). However, discovery was reopened from March 11, 2026 to May 11, 2026, during which the current dispute arose. *See* Doc. No. 105.

By the present motion, Defendants seek to compel Plaintiffs to respond to Defendants' Interrogatories Nos. 1, 2, and 3. Doc. No. 110; *see also* Doc. Nos. 110-1, 113. Plaintiffs objected (at least in part) to these Interrogatories on the basis of attorney-client privilege. Doc. No. 110-2. Plaintiffs also raise attorney-client privilege in their opposition. Doc. Nos. 111, 114. Upon review of all filings, the Court finds that Defendants' motion (Doc. No. 110) is due to be granted in part and denied in part as follows.

## II.   LEGAL STANDARDS.

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "State law governs the application of

attorney-client privilege in civil matters." *See Ellis v. Chambers*, No. 21-13984, 2022 WL 17752231, at \*9 n.10 (11th Cir. Dec. 19, 2022) (citing Fed. R. Evid. 501). Pursuant to Florida law, which the parties both apply to the present dispute,[1] "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." Fla. Stat. § 90.502(2). "In order for the attorney-client privilege to apply, all of these elements must be present." *Lesti v. Wells Fargo Bank NA*, No. 2:11-cv-695-FtM-29DNF, 2013 WL 12358008, at \*2 (M.D. Fla. July 30, 2013) (citing *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 458 (Fla. Dist. Ct. App. 1999)).

The proponent of the attorney-client privilege bears the burden of establishing it. *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994). *See also MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013). "This burden can be met by describing 'the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged[,] . . . will enable other parties to assess the applicability of the privilege.'" *Coffey-Garcia v. S. Miami Hosp., Inc.*, 194 So. 3d 533, 537 (Fla. Dist. Ct. App. 2016) (quoting Fla. R. Civ. P. 1.280(c)(6)). Moreover, "[t]he

---

[1] It is unclear why Defendants cite to decisions applying federal and other state privilege jurisprudence (Doc. No. 110, at 2-3, Doc. No. 113, at 7, 9), and in the absence of any explanation, the Court does not consider these decisions.

privilege protects only communications to and from a lawyer; it does not protect facts known by the client independent of any communication with the lawyer, even if the client later tells the fact to the lawyer." *Id.* "The Court should not have to guess or speculate about the applicability of the privilege, for the party asserting it has the affirmative duty to demonstrate that it applies to each document or communication sought to be disclosed." *See Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, 519 F. Supp. 3d 1184, 1198 (S.D. Fla. 2021) (citation and internal quotations omitted).

## III.   ANALYSIS.

### A.   *Interrogatories 1 and 2.* [2]

Interrogatories 1 and 2 are interrelated, and are therefore addressed together. Interrogatory 1 asks Plaintiffs to "[i]dentify the date on which You first believed that the Euromonitor #1 Claims may have been released by the Settlement Agreement." Doc. No. 110-1, at 6. And Interrogatory 2 asks Plaintiffs to describe how they reached that belief. *Id.*

---

[2] The Court requested the parties to address the relevancy of the discovery at issue in their supplemental briefing. Doc. No. 112. Although Plaintiffs argue in their supplemental briefing that the information Defendants seek is only "marginally relevant," (Doc. No. 114, at 6-7), Plaintiffs do not oppose the motion to compel on that basis, nor provide any legal authority suggesting that the degree of the information's relevancy plays any role in assessing attorney-client privilege objections. And the Court is satisfied from a review of both sides' supplemental briefing as well as the operative pleadings that relevancy is not in dispute.

Plaintiffs' responses to both Interrogatories are virtually identical.  Doc. No. 110-2, at 5-6.  In regards to privilege, Plaintiffs state:  "Zesty Paws further objects to this Interrogatory on the grounds it seeks information protected by the attorney-client privilege, work-product protection, and/or other applicable privileges or protections."  *Id.*[3]  No further details are provided.

Defendants argue as to Interrogatory 1 that they are only seeking a date, which is a fact not shielded by the attorney-client privilege.  Doc. No. 110, at 2.  And as to Interrogatory 2, Defendants submit that they are not seeking any privileged information, but only any "non-privileged communications or facts" that Plaintiffs based their beliefs on, and if no such non-privileged information exists, Plaintiffs should state as much and also be required to stipulate that they will not offer any testimony, evidence, or argument at trial about such information.  *Id.* at 3.

In response, Plaintiffs argue that the "fact" Defendants seek in Interrogatory 1 is the date that a legal opinion was formed, which is so specific that answering it would require Plaintiffs to reveal the substance of attorney-client communications regarding that date.  Doc. No. 111, at 1-2.  Plaintiffs further contend that if they simply identified the date, it "would risk misuse" absent Plaintiffs providing further detail or explanation, and such additional details or explanation are also

---

[3] Plaintiffs raised other general and specific objections, none of which are at issue here.  Doc. No. 110-2, at 5-6.

privileged.  *Id.*  And as for Interrogatory 2, Plaintiffs argue that Defendants are asking how they formed a legal opinion, which clearly implicates the mental impressions and thought process of counsel in anticipation of litigation, which is privileged.  *Id.* at 2.  Plaintiffs further claim that they have already disclosed the basis for their contention that the Euromonitor #1 Claims may have been released via Plaintiffs' briefing, depositions, and document production, and Plaintiffs need not do more here.  *Id.* at 2-3.

As noted above, the burden to establish that the information Defendants seek in these Interrogatories is privileged rests with Plaintiffs, and it is a heavy burden. And Plaintiffs fall short of meeting that burden.  Doc. Nos. 111, 114.  Plaintiffs simply rely on conclusory statements that attorney-client privilege applies, and/or that they would be forced to provide additional qualifying privileged information, without further detail, and without identifying any communications between Plaintiffs and their counsel that may be implicated.  No. 111, at 1-3; Doc. No. 114, at 3-6.  Simply stating that Plaintiffs' belief "was, of course, influenced by legal analysis and advice" leaves the Court to guess or speculate as to what part of Plaintiffs' answer could be privileged, which is not enough.  Doc. No. 114, at 4.  *See Kaleta v. City of Holmes Beach*, 682 F. Supp. 3d 1062, 1070 (M.D. Fla. 2023) ("Plaintiffs have not identified any confidential communications that would be disclosed by answering Defendant's limited questions, and the court therefore finds that

Plaintiffs have not met their burden to establish that the privilege applies."). *See also Coffey–Garcia*, 194 So.3d 533 (Fla. Dist. Ct. App. 2016) ("While [plaintiff] can be required to answer factual questions about what she learned at various points in time concerning the nature and potential causes of her [child's] condition from sources other than the attorneys she consulted, she cannot be forced to answer questions that would require her to reveal the contents of advice or information she received from the attorneys.").

Plaintiffs' reliance on *Aldora Aluminum & Glass Products, Inc. v. Poma Glass & Specialty Windows, Inc.*, No. 3:14-cv-1402-J-34JBT, 2016 WL 7668484 (M.D. Fla. Feb. 18, 2016) and *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 633 (S.D. Ohio 1984) is also unpersuasive. Both cases involved a moving party asking either leading deposition questions (*Aldora*) or leading interrogatories (*Dayco*) which requested the opposing party to provide dates of specific types of communications with their counsel, such as when a complaint was to be filed, the types of procedures to be used to negotiate or draft contracts and/or to collect sums due under those contracts, or when communications occurred regarding the existence of certain contracts. *See Aldora*, 2016 WL 7668484, at *1; *Dayco*, 102 F.R.D. at 634. In other words, the very nature of the question being asked was so specific as to invade the attorney-client privilege. In contrast, Defendants here are simply asking in Interrogatories 1 and 2 for the date that Plaintiffs formed a belief, and how that

belief was formed, not the dates or contents of any specific communications with their counsel. *See Aldora*, 2016 WL 7668484, at *2 ("Defendant does not merely ask when discussions regarding this dispute took place, but asks when Plaintiff gave specific instructions to its attorney."). Nor are these Interrogatories so detailed as to be leading on their face; they do not ask for dates of any specific attorney-client communications, the subject matter (release of the Euromonitor # 1 Claims) is squarely at issue in this case, and Plaintiffs admit that they have already provided relevant information on these topics. *See* Doc. No. 94; Doc. No. 113, at 2-6.

Accordingly, the Court will overrule Plaintiffs' attorney-client privilege objection and grant Defendants' motion to compel as it relates to Interrogatories 1 and 2. Specifically, Plaintiffs shall provide the date requested in Interrogatory 1. As for Interrogatory 2, Plaintiffs shall answer to the extent that they relied upon any "non-privileged communications or facts" to form their alleged belief. If no such "non-privileged communications or facts" exist, Plaintiffs shall state as much in their verified response. *See Mobley v. Homestead Hosp., Inc.*, 202 So. 3d 868, 870 (Fla. Dist. Ct. App. 2016) (allowing factual questions regarding what plaintiff learned at various points in time from sources other than the attorneys she consulted, noting that "[t]he contents of confidential communications between the attorney and client are privileged and not discoverable, whereas dates, places, and names of consulted counsel are generally not privileged and are discoverable."). However, Defendants'

-8-

request that Plaintiffs be required to "stipulate that [they] will not offer any testimony, evidence, or argument at trial about such information," which is unsupported by any legal authority and appears to go beyond what is authorized under Fed. R. Civ. P. 37(a), will be denied.

B.    *Interrogatory 3.*

Interrogatory 3 calls for Plaintiffs to "[i]dentify the date on which You first decided to file suit asserting that the Euromonitor #1 Claims were released by the Settlement Agreement."  Doc. No. 110-1, at 6.  Plaintiffs incorporated their general objections, asserted privilege, and then answered "[s]ubject to and without waiving any of these objections, Zesty Paws responds that no decision to file is final until the filing is made, so Zesty Paws identifies October 3, 2024, when Zesty Paws filed the complaint."  Doc. No. 110-2, at 6-7.

Defendants argue that Plaintiffs failed to answer Interrogatory 3 as they did not give the date they "first" decided to file suit, but rather the "final" date of their decision.  Doc. No. 113, at 10.  For their part, Plaintiffs state that they properly answered Interrogatory 3 using the common definition of "decide," and that what Defendants really now seek is to redraft Interrogatory 3 to ask when Plaintiffs first "considered" filing the present lawsuit, which is impermissible.  Doc. No. 111 at 3; Doc. No. 114, at 9-10.  Upon consideration, the Court agrees with Plaintiffs.

"In answering interrogatories, parties should use common sense to construe terms and phrases by their ordinary meanings." *Fla. Dep't of Fin. Servs. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 4:11-cv-242-RS/WCS, 2012 WL 13026761, at *1 n. 1 (N.D. Fla. Jan. 6, 2012) (citation omitted).  Defendants did not provide a definition of the term "decide" (Doc. No. 110-1), thus Plaintiffs chose to utilize the ordinary meaning of that word, as defined by Merriam-Webster Dictionary: "to make a final choice or judgment about."[4]  That is all Plaintiffs were required to do. Defendants may not like Plaintiffs answer, but that is not a basis to ask Plaintiffs to answer a question Defendants could have, but did not, ask.  *See, e.g., Smith v. Orange Cnty. Sch. Bd.*, No. 6:04-cv-1811-Orl-28DAB, 2006 WL 4792579, at *1 (M.D. Fla. Sept. 15, 2006), *aff'd sub nom. Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361 (11th Cir. 2007) (finding defendant's interpretation of phrase "due process procedure" in responding to interrogatory sufficient where term was undefined).  *See also Kyles v. Health First, Inc.*, No. 6:09-cv-1248-Orl-28GJK, 2010 WL 11626712, at *2 n.2 (M.D. Fla. Sept. 27, 2010) ("It is not the trial court's responsibility to redraft, rewrite or narrow a discovery request which on its face is patently overbroad or vague." (citation omitted)).

---

[4] *See Decide*, MERRIAM-WEBSTER, https://www.merriam-webster.comdictionary/decide?src=search-dict-box (last visited June 22, 2026).

## IV.   CONCLUSION.

Based on the foregoing, it is **ORDERED** as follows:

1.      Defendants' Motion to Compel (Doc. No. 110) is **GRANTED in part and DENIED in part**.

2.      Plaintiffs' attorney-client privilege objections to Interrogatories 1 and 2 are **OVERRULED.**

3.      Within **fourteen (14) days** of this Order, Plaintiffs shall serve on Defendants amended and verified answers to Interrogatories 1 & 2.  *See* Doc. No. 110-2, at 6.  Specifically, Plaintiffs shall provide the date requested in Interrogatory 1.  Plaintiffs shall answer Interrogatory 2 to the extent that they relied upon any "non-privileged communications or facts" to form their alleged belief.  If no such "non-privileged communications or facts" exist, Plaintiffs shall state as much in their verified response.

4.      Defendants' motion (Doc. No. 110) is **DENIED in all other respects.**

5.      **Failure to comply with this Order may result in sanctions.  *See* Fed. R. Civ. P. 37(b).**[5]

---

[5] Defendants do not seek any sanctions under Fed. R. Civ. P. 37(a)(5), and the Court declines to award any *sua sponte.  See* Fed. R. Civ. P. 37(a)(5)(iii).

**DONE** and **ORDERED** in Orlando, Florida on June 23, 2026.

_____
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record